```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

DWAYNE RASMUSSEN,              :     **CIV. NO. 17-13698 (RMB)**
                               :
            Plaintiff          :
                               :
     v.                        :          **OPINION**
                               :
WARDEN YOUNG, *et al.*,        :
                               :
            Defendants         :

**BUMB**, DISTRICT JUDGE

Plaintiff Dwayne Rasmussen, an inmate confined in the Federal Correctional Institution in Fairton, New Jersey, brings this civil rights act alleging wrongful imprisonment based on violation of the Interstate Agreement on Detainers ("IAD") and his speedy trial rights, and violation of his First Amendment rights by a prison employee's interference with the prison grievance procedures. (Compl., ECF No. 1.)

Plaintiff has established his financial eligibility to proceed without prepayment of fees (*in forma pauperis* or "IFP") under 28 U.S.C. § 1915. (IFP App., ECF No. 1 at 16-19.) When a prisoner is permitted to proceed without pre-payment of the filing fee or when a prisoner pays the filing fee but seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require district courts to review a complaint in a civil action and *sua sponte*

dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, Plaintiff's complaint is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b) for failure to state a claim.

I. *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) "[A] court must accept as true all of the allegations contained in a complaint[.]" Id.

Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II. DISCUSSSION

    A.    The Complaint

Plaintiff alleged the following facts in his complaint, which, if plausible, are accepted as true for purposes of this screening. The defendants to this action are Warden Young at FCI Fairton; T. Patrone, Records Officer at FCI Fairton; and unknown Federal Marshals in Oklahoma City, Oklahoma. (Compl., ECF No. 1 at 6.) Plaintiff was arrested on January 18, 1991 and placed in a county jail on state charges for robbing the Local Federal Savings and Loan in the State of Oklahoma. (Id. at 9, 47.) In April 1991, Plaintiff was indicted in federal court in the Western District of Missouri for robbing the United Missouri Bank in Joplin, Missouri. (Id.) The U.S. Marshals Service requested that the Oklahoma City County Jail place a hold/detainer on Plaintiff for the Missouri bank robbery. (Id. at 47.) The "government" did not advise Plaintiff of his IAD rights, causing him to fail to meet the notice requirements. (Id. at 7, ¶2.)

On November 1, 1991, a federal judge issued a writ of habeas corpus *ad prosequendum* for Plaintiff to answer the federal charges brought in Missouri and Oklahoma. (Compl., ECF No. 1 at 9, 47.) Plaintiff was taken to federal court and pled guilty on November 13, 1991. (Id.) The U.S. Marshals returned Plaintiff to Oklahoma City as a state prisoner on December 3, 1991. (Compl., ECF No. 1 at 9, 47.) On December 30, 1991, the U.S. Marshals brought him to federal court for sentencing. (Id.) After his federal sentencing,

4

Plaintiff was returned to state custody in Oklahoma City. (Compl., ECF No. 1 at 9, 47.)

Plaintiff was sentenced in July 1992 by the State of Oklahoma, and he was sent to an Oklahoma state prison to serve his sentence. (Id. at 9-10.) An updated federal detainer was filed with the Oklahoma Department of Corrections for Plaintiff to serve his federal sentence after serving his state sentence. (Id. at 47.) After serving fifteen years in state prison, the U.S. Marshals took Plaintiff into custody to serve his federal sentence. (Id. at 10.)

Plaintiff attached to his complaint a Judgment from the United States District Court, Western District of Oklahoma, which indicates he pled guilty to one count of bank robbery by force and violence (United Missouri Bank in Joplin, Mo.) in Criminal Action 91-196-R, one count of unlawful possession of a firearm, and one count of bank robbery (Local Federal Savings & Loan in Oklahoma City, Oklahoma) in Criminal Action 91-203-R. (Id. at 35.) Plaintiff was sentenced in both federal criminal actions in the Western District of Oklahoma on December 30, 1991, to concurrent 120-month terms of imprisonment, and four years supervised release on each count, also to be served concurrently. (Id. at 36-37.)

Plaintiff also attached to his complaint his Judgment of Conviction for revocation of supervised release in the United

States District Court, Western District of Oklahoma, sentencing him to an 11-month term of imprisonment on June 23, 2017 in Criminal Actions 91-196-R and 91-203-R. (Compl., ECF No. 1 at 39-42.)

Finally, Plaintiff attached to his complaint his administrative remedy requests and responses related to his claim of wrongful imprisonment, filed in 2014 and again in 2017. (Compl., ECF No. 1 at 29-32, 43-51.) Warden C.F. Swartz responded as follows to Plaintiff's September 3, 2014 Administrative Remedy request:

> … You state that your 120-month term of imprisonment has been served, and you are being held illegally.
>
> A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed in January 1991, in the Western District of Missouri, you allegedly robbed by force and with a firearm, the United Missouri Bank in Joplin Missouri. Also, in January 1991, you allegedly robbed by force and with a firearm, the Local Federal Savings and Loan in Oklahoma City, Oklahoma. In January 1991, the State of Oklahoma filed charges on you for the robbery in Oklahoma City. In January 1991, you were arrested for the Oklahoma State charges by state authorities, and you were placed in the Oklahoma City County Jail.
>
> In April 1991, after your arrest by the state authorities, the Western District of Missouri Grand Jury indicted you for the Missouri robbery, and a warrant for your arrest was issued. This same month, the US Marshals from Missouri, requested that a hold/detainer be placed on you for those charges, with the

Oklahoma County Jail because you were in State Custody. In November 1991, the Western District of Oklahoma received a writ or request to produce you in federal court, to answer for the federal charges filed out of Missouri, and new federal charges filed in federal court in Oklahoma. You were in custody from November 15, 1991, until December 3, 1991, a total of (18 days).

On December 3, 1991, you were returned to state custody because you were/are a state prisoner. On December 3, 1991, a federal judgment was issued, and states as follows: The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of one hundred twenty (120) months on Ct one (1) of Cr. 91-196 and one hundred twenty (120) months on Counts one (1) and two (2) of Cr91-203. These terms are to be served concurrently with each other.

In July 1992, you were sentenced in the state case and thereafter, sent to the State Department of Corrections to start serving your sentence. Because you were/are a state prisoner, in September 1992, an updated detainer was filed with the Department of Corrections based on your federal judgment. Since you were arrested first by Oklahoma State authorities and placed into state custody (Oklahoma County Jail) on state charges, we do not have the authority to remove you from said custody until you have completed your state time, or the state releases you from their custody. Therefore, you will not start serving your federal sentence until you are released to federal custody, via detainer, by the Oklahoma State Department of Corrections.

Accordingly, your Request for Administrative Remedy is denied…

(Compl., ECF No. 1 at 47.)

Plaintiff asserts the following legal conclusions with respect to his state and federal imprisonment:

- his federal sentence should have been completed during his state prison term (Compl., ECF No. 1 at 10);

- Article IV(e) of the IAD prohibits returning a prisoner to the sending state before the receiving state has tried the prisoner, and if this provision is violated, the indictment, information or complaint shall be dismissed without prejudice. Therefore, returning Plaintiff to state custody after his federal sentence violated the Anti-Shuttling Provision of the Interstate Agreement on Detainers and the Speedy Trial Act (Id.);

- The warden of FCI Fairton is liable for failing to promptly inform him of the source and contents of any detainer lodged against him and failing to inform him of his right to make a request for a final disposition of the indictment, information or complaint on which a detainer is based (Id. at 6-7);

- his Sixth Amendment right to a speedy trial was violated (Id. at 6);

- his ten-year sentence was illegal, and he seeks monetary relief for each day he was imprisoned (Compl., ECF No. 1 at 12);

Plaintiff also seeks declaratory judgment. (Compl., ECF No. 1 at 5.)

Plaintiff further alleges that when he attempted to exhaust his administrative remedies for this claim, T. Patrone, Records Officer at FCI Fairton, interfered with his exhaustion of remedies by refusing to sign his response to Plaintiff's BP-8 form and

8

refusing to provide Plaintiff with the records he sought. (Compl., ECF No. 1 at 13.)

III. DISCUSSION

Plaintiff asserts jurisdiction under 42 U.S.C. §§ 1983, 1985, 1986 and 28 U.S.C. §§ 2201, 2202.[1] Sections 1983, 1985 and 1986, however, are inapplicable because they apply to constitutional violations by state actors. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

---

[1] 28 U.S.C. §§ 2201 and 2202, Declaratory Judgments, respectively provide:

> any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
>
> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

"The Declaratory Judgment Act does not, however, provide an independent basis for subject-matter jurisdiction; it merely defines a remedy." Allen v. DeBello, 861 F.3d 433, 444 (3d Cir. 2017).

9

Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) Here, the defendants are federal employees, not state actors. Therefore, Plaintiff's claims potentially fall under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 402 U.S. 388 (1971), which created a remedy for money damages against a federal agent for violating an individual's Fourth Amendment rights under the Constitution. See Iqbal, 556 U.S. at 675-76 ("In the limited settings where Bivens does apply, the implied cause of action is the "federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983") (quotations omitted).

The Supreme Court, in Ziglar v. Abbasi, held that when a party seeks to assert an implied cause of action under the Constitution, courts must first determine whether "special factors counsel hesitation" in creating an implied cause of action beyond those already recognized by the Supreme Court. 127 S. Ct. 1843, 1857-58 (2017). This Court, however, need not reach the Ziglar issue because even if a Bivens remedy is implied, Plaintiff has failed to state a cause of action.

A. The IAD Claim

The United States entered into the Interstate Agreement on Detainers with the contracting states on its own behalf and on

behalf of the District of Columbia. 18 U.S.C. App. 2, §2. The purpose of the agreement is to "encourage the expeditious and orderly disposition of" outstanding charges against a prisoner "and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Id., art. I.

In U.S. v. Wilson, the Tenth Circuit Court of Appeals held that, based on the following language of Article III(a) of the IAD, the time restrictions of the IAD do not come into play until a person begins service of a term of imprisonment:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: Provided, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

719 F.2d 1491, 1494 (10th Cir. 1983); accord U.S. v. Muniz, 1 F.3d 1018, 1025-26 ("Articles III and IV[2] [of the IAD] apply to prisoners who are serving a 'term of imprisonment' in a state party to the IAD, and therefore *Wilson* forecloses any other interpretation of the time when the provisions of the IAD apply.") The First, Ninth, Sixth and Eighth Circuit Courts of Appeals agreed that the IAD only applies to persons who have begun service of a term of imprisonment. See United States v. Currier, 836 F.2d 11,

---

[2] Article IV(a) of the IAD provides:

> The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer *and who is serving a term of imprisonment in any party State* made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information, or complaint shall have duly approved, recorded, and transmitted the request: And provided further, That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

18 U.S.C. App. 2, § 2 (emphasis added).

16 (1st Cir. 1987); United States v. Reed, 620 F.2d 709, 711 (9th Cir.), cert. denied, 449 U.S. 880 (1980); United States v. Harris, 566 F.2d 610, 613 (8th Cir. 1977); United States v. Roberts, 548 F.2d 665, 671 (6th Cir.), cert. denied, 431 U.S. 920 (1977); see also U.S. v. Williams, Cr. Action No. 11-223-1, 2012 WL 5869221 at *5 (E.D. Pa. 2012) (holding IAD did not apply to inmate before he was sentenced).

Based on the plain language of the statute, this Court agrees with those courts which have held Articles III and IV of the IAD do not apply to pretrial detainees because they are not "serving a term of imprisonment." See Geisinger Community Med. Center v. Sec. U.S. Dep't of Health and Human Services, 794 F.3d 383, 391 (3d Cir. 2015) ("an exercise of statutory interpretation must begin by examining the plain and literal language of the statute … [w]here the statutory language is plain and unambiguous, further inquiry is not required") (internal quotations omitted)).

Plaintiff was a pretrial detainee in Oklahoma City County Jail when federal authorities lodged a detainer on him for prosecution of pending federal charges. Therefore, the IAD did not apply to Plaintiff's transfer from Oklahoma City County Jail to the District Court for the Western District of Oklahoma. Further, the IAD did not apply to Plaintiff's transfer from the Western District of Oklahoma back to Oklahoma City County Jail because he

13

had not yet begun to serve his federal sentence.[3] Therefore, Plaintiff fails to state a claim under the IAD.

B. Speedy Trial Claim

Plaintiff also alleges his right to a speedy trial was violated, although he does not clearly state whether he is referring to his state or federal charges. There is no fixed-time under the Constitution in which a criminal trial must occur. Barger v. Wingo, 407 U.S. 514, 521 (1972). Assuming Plaintiff is alleging violation of his right to a speedy trial on the state charges, according to the complaint, Plaintiff was arrested in Oklahoma in January 1991 and he was sentenced on those charges in July 1992. Plaintiff has not alleged if or when he asserted his right to a speedy trial on the state charges nor has he described any factors that caused delay in the trial. See Barker v. Wingo,

---

[3] In the complaint, Plaintiff alleges his federal sentence should have been completed during his state prison term. "When a federal court sentences a defendant in state custody at the time of sentencing, 'the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for service of the federal sentence.'" Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. Apr. 4, 1996) (quoting U.S. v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y. Jan. 29, 1993) citing Barden v. Keohane, 921 F.2d 476, 481–82 (3d Cir. 1990). According to the complaint and attached documents, the BOP did not commence Plaintiff's federal sentence until Plaintiff was transferred to federal custody after serving his state sentence. Plaintiff's remedy for his claim that his federal sentence should have been completed during his state prison term was to seek a *nunc pro tunc* designation of the state facility for service of his federal sentence.

407 U.S. 514, 530-34 (1972) (describing balancing test for violation of constitutional right to a speedy trial). Therefore, he fails to state a claim.

Moreover, none of the defendants named in the complaint were responsible for when Plaintiff's state trial commenced. Even if Plaintiff could amend the complaint to name a defendant who is not immune for a civil suit for damages[4] and who was responsible for his state charges not going to trial sooner, the two-year *Bivens* statute of limitations would bar his claim. See Hughes v. Knieblher, 341 F. App'x 749, 752 (3d Cir. 2009) (New Jersey's two-year statute of limitations for personal injury causes of action applies to Bivens claims brought in New Jersey).

Construing Plaintiff's complaint to allege violation of his right to a speedy trial on the federal charges, the same two-year statute of limitations bars his claim. This Court cannot discern

---

[4] Prosecutors are absolutely immune from damages under 42 U.S.C. § 1983 for his or her actions that are associated with the judicial process. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). Judicial immunity is overcome only when the actions are not taken in the judge's judicial capacity or when the judge's actions are taken in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991). "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," and therefore is not subject to liability under Section 1983. Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981). The same is true of private defense attorneys. See Steward v. Meeker, 459 F.2d 669, 670 (3d Cir. 1972) (per curiam) (privately-retained defense counsel is not a state actor subject to 42 U.S.C. § 1983).

any facts Plaintiff could allege to cure the deficiencies in his claim involving his right to a speedy trial under the Sixth Amendment.

Plaintiff also alleged Records Officer T. Patrone violated his First Amendment right to seek redress for grievances by refusing to sign his BP-8 form and provide the documents Plaintiff requested. Prisoners do not have a constitutional right to prison grievance procedures, therefore obstruction of such procedures does not give rise to an independent claim under Section 1983 or its federal counterpart under Bivens. Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (per curiam).

Furthermore, to state a violation of the First Amendment right of access to the courts, a Plaintiff must show an actual injury. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). Plaintiff cannot show an actual injury because 42 U.S.C. § 1997e(a) ("PLRA") would only preclude him from filing the present suit if he did not exhaust available administrative remedies. If Plaintiff could show Patrone's actions prevented him from properly exhausting his administrative remedies, the PLRA would not preclude him from bringing his civil rights action. For all the reasons discussed above, amendment of the complaint to state a claim for relief is futile. See Grayson, 293 F.3d at 114 (dismissal under 28 U.S.C. §

1915(e)(2) should be without prejudice unless amendment would be inequitable or futile.)

V. CONCLUSION

The Court dismisses the complaint with prejudice. Plaintiff's motion for appointment of counsel is moot.

An appropriate order follows.

s/Renée Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**

Dated: August 8, 2018